UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROY L. RICE,

                        Plaintiff,            04-CV-6426T

v.                                            DECISION
                                              and ORDER
JOANNE B. BARNHART,
Commissioner of Social Security,

                        Defendant.
_____

## INTRODUCTION

Plaintiff, Roy Rice ("Rice") filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("Disability"), and Supplemental Security Insurance ("SSI"). On June 27, 2005 plaintiff moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. On June 30, 2005, the Commissioner cross-moved for judgment on the pleadings.

For the reasons that follow, I find that the Commissioner's decision is not supported by substantial evidence. Accordingly, plaintiff's motion for judgment on the pleadings is granted and defendant's motion for judgment on the pleadings is denied.

## BACKGROUND

Plaintiff applied for disability and SSI benefits on September 25, 1980 claiming that he was unable to work due to kidney stones and gout. (Tr. 26-29) By Determination dated March 3, 1981,

plaintiff's claim was denied and no further appeal was taken. (Tr. 30, 35) The denial was subsequently reopened in accordance with the Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995). (Tr. 368-69)

On February 19, 1982, Rice again applied for disability and SSI benefits alleging "kidney problems" had prevented him from working since August 2, 1979. (Tr. 44-53) The claim was denied by notice dated June 9, 1982. (Tr. 55-58) The denial was subsequently reopened in accordance with Dixon and Stieberger v. Sullivan, 138 F.Supp. 716 (S.D.N.Y. 1990). (Tr. 370-392)

On April 3, 1985, plaintiff applied for disability and SSI benefits claiming that he was disabled by a "kidney ailment" with an onset date of August 2, 1979. (Tr. 59-68) The claims were denied by Notice dated June 7, 1985. (Tr. 69-71) The denial was subsequently reopened in accordance with Stieberger. (Tr. 370-392)

On October 31, 1991, plaintiff filed an application for disability and SSI benefits claiming he was impaired by his "kidney" and alleging an onset date of October 31, 1991. (Tr. 75-78) By Notice dated June 25, 1992, the application was denied. (Tr. 103-107)

Another application for disability and SSI benefits was filed on February 24, 1993 in which Rice claimed that he was disabled since June 26, 1989 by "heart and kidney problems." (Tr. 108-111) By Notice dated December 20, 1993, the claimed was denied. (Tr. 112-115) Rice submitted a Request for Reconsideration claiming that

2

his condition was getting worse and that he could not walk as far, stand as long, nor bend well. (Tr. 116) By Notice dated September 13, 1994, plaintiff's Request for Reconsideration was denied. (Tr. 119-121) Following a hearing, a decision dated September 23, 1995 found that plaintiff was disabled from February 24, 1993 through June 29, 1994 but not thereafter. (Tr. 339-346)  Plaintiff requested a review which was denied as untimely.

Plaintiff filed another application with a protective filing date of July 17, 1996, alleging disability since February 24, 1993. (Tr. 364-366) Finally, plaintiff protectively filed an application for disability on July 9, 1998 alleging that he had been disabled since February 24, 1993. (Tr. 15) That application was granted but plaintiff was found to be disabled only as of June 1, 1998. (Tr. 15)

On March 12, 1993, plaintiff requested that the denial of his prior applications be reviewed in accordance with the Stieberger court order. (Tr. 336) On August 21, 1995, plaintiff requested that the denial of his prior applications be reviewed in accordance with the Dixon court order. (Tr. 337-338)  Both reviews were completed, and in two separate letters dated June 12, 2001, plaintiff was advised that the prior denials of his applications had been proper. (Tr. 398-401) On July 20, 2001, plaintiff requested a hearing before an Administrative Law Judge ("ALJ") but indicated that he did not want to personally appear at a hearing. (Tr. 402-404) In a

3

decision dated June 18, 2003, the ALJ found that plaintiff was not disabled, with the exception of the period from February 24, 1993 through June 29, 1994. (Tr. 14-24) After the Appeals Council denied plaintiff request for review on July 15, 2004, the decision became final and plaintiff commenced this action in federal court on September 3, 2004.

A.   Medical Background

On March 3, 1979, Rice suffered an abdominal injury while on the job at Marion Foods when a crate plaintiff was standing on to clean out a vat broke causing plaintiff to strike the sharp edge of the vat. (Tr. 170) The accident caused abdominal pain and discomfort, urinary tract hemorrhage and gastro-intestinal bleeding. (Tr. 170) Rice was admitted to Newark-Wayne Hospital where he was treated and released one week later. (Tr. 170)

Rice was admitted to Newark-Wayne Hospital on July 7, 1979 with right kidney pain radiating down toward the pubis and abdominal distention. (Tr. 178) Plaintiff had a known kidney stone in the right kidney.  After being examined to be sure there were no obstructions, plaintiff was discharged on July 13, 1979 with dietary directions. (Tr. 178) Dr. Joseph Kaufman completed a one page form on behalf of the State Department of Social Services in which he noted that he treated plaintiff for acute rheumatoid arthritis, gouty arthritis, and acute renal colic. (Tr. 181-182)

On February 16, 1981, plaintiff was examined by Dr. R.J.

4

Washington for complaints of pain in the lower extremities. (Tr. 186)  Plaintiff told Dr. Washington during this exam that he had been treated for gout for the prior 15 years which arose after an intestinal bypass operation ten years prior to that time in an effort to lose weight. (Tr. 186) Dr. Washington's examination was normal and he found that the chronic pain of the feet was of unknown etiology. (Tr. 187)

On January 11, 1983, plaintiff was admitted to Highland Hospital for a renal stone, gout, and an examination as a follow up to bypass surgery for obesity. (Tr. 191) Surgical removal was necessary to remove kidney stones in the right kidney but it was unsuccessful.  Plaintiff was discharged six days later with one remaining stone in the right kidney and a plan for another tube placement. (Tr. 191-200)

Plaintiff was admitted to Strong Memorial Hospital on December 15, 1986 for treatment of a kidney stone in the right kidney. (Tr. 201)  Plaintiff was admitted to Strong Memorial Hospital on January 30, 1987 for removal of the right ureteral catheter which was left after surgery performed in December 1986 for treatment of kidney stones. (Tr. 464) Plaintiff was again treated for recurrent kidney stone formation in his right kidney on November 1, 1991 at Strong Memorial Hospital. (Tr. 204) At this time, Rice developed a kidney infection for which he was treated with antibiotics. (Tr. 240)

Medical records from Clifton Springs Hospital and Clinic

reveal that plaintiff was treated for kidney stones in the right kidney throughout 1990. (Tr. 450-457)

After experiencing an episode of syncope, plaintiff was administered an EEG on April 3, 1991. (Tr. 460) No abnormalities were noted. (Tr. 461)  An x-ray report of plaintiff's cervical spine revealed "severe degenerative disc disease at C5-6 and C6-7". (Tr. 227) Rice was given an EEG test on December 3, 1991 in an effort to determine the cause of recurrent blackouts which were preceded by shortness of breath and numbness in plaintiff's right hand. (Tr. 221) The results of the EEG was "within normal limits". (Tr. 221)

Medical notes of plaintiff's primary physician, Dr. Tillman Farley, dated February 12, 1992 indicate that there was no correlation between Rice's symptoms and heart rate changes and that plaintiff's "vague complaints" about blackouts did not ring true because he did not fall hard enough to indicate a real unconscious fall. (Tr. 237)  An abdominal ultrasound performed on February 18, 1992, showed non-obstructional kidney stones in the right kidney. (Tr. 236)

Rice was underwent an intellectual evaluation on May 7, 1992 by Dr. Peter Cormack. (Tr. 189-190) Dr. Cormack determined that Rice's level of intellectual functioning was at a "borderline level in the verbal area with a verbal IQ of 5, a low-average level in the performance area with a performance IQ of 83 and with a

borderline level statistic summarizing his performance across the entire scale." (Tr. 190) Rice's "full-scale IQ" was determined to be 78.

Tests on the kidneys in November, 1992 at Strong Memorial Hospital indicated that plaintiff had multiple kidney stones in the right kidney and a minor obstruction in that kidney. (Tr. 303)

A disability questionnaire completed by Dr. Abraham Cockett of Strong Memorial Hospital on March 28, 1993 indicated that Rice had no limitations to lift and carry, stand or walk, sit, push or pull. (Tr. 249-253) On May 7, 1993, a renal scan of the kidneys revealed that plaintiff's right kidney had diminished capacity and atrophy. (Tr. 300)  Dr. John Cannon of Strong Memorial Hospital completed a disability form on June 26, 1993 in which he noted that Rice was limited to lifting and carrying no more than 10 pounds and that Rice was scheduled for a nephrectomy for stone disease. (Tr. 256-260)

The right nephrectomy was performed on July 12, 1993. (Tr. 293) On October 13, 1993, Dr. Richard Paul noted that Rice was doing so well after his kidney surgery that he was only needed for follow-up examinations in six months. (Tr. 262)

Rice was evaluated in March 1994 for adjustment disorder with depressed mood. (Tr. 322) He was prescribed Prozac and psychotherapy. (Tr. 322) Plaintiff was treated for "acute gout" in April and May, 1994. (Tr. 316, 319) The gout was treated with

medication.   Several assessment forms were completed regarding plaintiff's residual capacity.   On September 12, 1994, Dr. Nickolova noted that plaintiff had "borderline verbal cognitive ability and depression." (Tr. 494) Dr. Nickolova found plaintiff to be moderately limited in his ability to understand and remember detailed instructions and in the ability to maintain attention and concentration for extended periods. (Tr. 492) Dr. Sibley completed a similar form in December, 1993 in which he found plaintiff to be "significantly subaverage" in his intellectual functioning. (Tr. 487)

In September, 1996, plaintiff was treated for kidney stones in the left kidney. (Tr. 516)

B.   <u>Non-Medical Background</u>

Rice is a 60 year old male with a ninth grade education.   (Tr. 79, 189) His work history includes working in a box making factory loading and unloading boxes, forklift operator, ceramics work, plumbing and heating work, and warehouse and machine operator. (Tr. 157) Rice performed these jobs intermittently between 1963 through 1988. (Tr. 157) As a forklift operator, Rice loaded and unloaded trucks. (Tr. 158) He gained skills working as a helper learning the skills in plumbing and heating at the V.A. Hospital in Canandaigua. (Tr. 161)

Rice completed a disability form on behalf of the New York state Department of Social Services, Office of Disability

8

Determinations on October 9, 1996 in which he claimed that he relied on the help of his daughters to assist with cooking and other household chores. (Tr. 421) Similar forms completed by friends indicated that plaintiff was able to drive himself to appointments and to the store. (Tr. 426) In his application for benefits dated November 12, 1991, plaintiff indicated that he has few hobbies and activities and that he sleeps a lot as a side effect of his medications. (Tr. 126)

### DISCUSSION

Pursuant to 42 U.S.C. § 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980). A disability is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual's physical or mental impairment is not

disabling under the Act unless it is:

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B). Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

In evaluating disability claims, the Commissioner is required to sue the five step process promulgated in 20 C.F.R. §§ 404.1520

and 416.920.  First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity.  Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work.  Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission.  If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled.  If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work. If he is not, the fifth and final inquiry is whether the claimant can perform any other work.  Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996).

This case comes to this Court on appeal as a result of the Second Circuit holdings of Stieberger v. Sullivan, 138 F.Supp. 716 (S.D.N.Y. 1990) and Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995). In August, 1985, the United States District Court for the Southern District of New York certified a statewide class of New York State residents which challenged the Commissioner's acquiescence policies with regard to published Circuit Court disability decisions.  On May 29, 1990, the district court granted partial summary judgment in favor of the plaintiffs, finding that the Social Security

Administration ("SSA") had "nonacquiesced" with respect to several Second Circuit holdings. Stieberger v. Sullivan, 138 F.Supp. 716 (S.D.N.Y. 1990). The Court also denied the plaintiffs' summary judgment with respect to other issues.

Thereafter, on June 19, 1992, a settlement of the class action was reached which was modified on July 29, 1992. Stieberger v. Sullivan, 801 F.Supp. 1079 (S.D.N.Y. 1992). Among other things, the settlement gave class members the right to have their cases reopened and readjudicated. Pursuant to the Stieberger procedures, the SSA must develop the record for forty eight months prior to the date it received the request for reopening. This time period is known as the "Development Period." Stieberger 801 F.Supp. At 1081, 1091. The Development Period also includes the time period subsequent to the request for reopening. The Development Period defines the period the SSA will review to determine whether the class member is entitled to cash relief under the settlement.

In Dixon v. Sullivan, 792 F.Supp. 942 (S.D.N.Y. 1992), the District Court concluded that SSA had systematically misapplied non-severity analysis at step two of the sequential analysis and ordered that claims denied at step two between June 1, 1976 and July 19, 1983 be readjudicated. This decision was affirmed by the Second Circuit which directed the SSA to "make reasonable efforts to retrieve available, relevant, administrative records for

purposes of readjudicating the claims of class members." <u>Dixon v.</u>
<u>Shalala</u>, 54 F.3d 1019, 1034 (2d Cir. 1995). <u>Dixon</u> required that
consideration of the evidence date back to the earliest onset date
alleged in a reopened disability insurance benefits application.

In his decision dated June 18, 2003, the ALJ determined that
the period under review for the <u>Dixon</u> appeal went back to
plaintiff's first application for disability in which he alleged an
onset date of August 2, 1979 through December 31, 1984, the date
plaintiff was last insured. (Tr. 16-17) The ALJ determined the
Development Period under <u>Stieberger</u> to be February 1, 1985 through
December 31, 1985, January 1, 1990 through January 31, 1993 and
June 30, 1994 through May 31, 1998, the date plaintiff's current
entitlement to supplement security income began. (Tr. 18)

The ALJ than followed the five step analysis to determine if
at any time during the relevant period Rice was entitled to a
period of disability.  The ALJ found that plaintiff (1) had not
engaged in substantial gainful activity during the relevant time
period; (2) that plaintiff had kidney stones leading to removal of
the right kidney, gout, borderline intellectual functioning and
obesity that were considered severe; (3) did not have an impairment
listed in Appendix 1, subpart P, Regulation No. 4; (4) had the
residual functional capacity to lift or carry up to ten pounds
frequently and twenty pounds occasionally, stand or walk for up to
six hours and sit for up to six hours during the course of an eight

12

hour workday; (5) did have the residual functional capacity to do his past relevant work as forklift operator, line worker, assistant line supervisor and line supervisor.  (Tr. 23-24)

Plaintiff does not dispute the ALJ's determination of the relevant time period for review.  Rather, Rice argues that he should not have been permitted to proceed with his <u>Dixon</u> and <u>Stieberger</u> claims pro se.  He contends that the form signed waiving his right to counsel was inadequate to inform him of the right and importance of counsel.  Moreover, he contends that the ALJ failed to fully develop the record.

Regardless of whether plaintiff had adequate notice to waive his right to counsel, it is clear that remand is required because the  record was not fully developed.  The ALJ has an expanded duty to "scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts" when a claimant is proceeding pro se. <u>Hankerson v. Harris</u>, 636 F.2d 893, 895 (2d Cir. 1980).  The duty to develop the record requires the ALJ to make reasonable efforts to get the necessary medical reports. <u>Perez v. Chater</u>, 77 F.3d 31, 47 (2d Cir. 1996).

A review of the medical evidence in this case reveals that there are clear gaps in the records.  For example, there are no medical records in the transcript for the year 1980 even though plaintiff claimed that he stopped work in August, 1979 and Dr. Kaufman indicated that he treated Rice from 1978 through September

13

1980, seeing him on a "monthly basis." (Tr. 181-182) Similarly, there are no treatment records for Dr. Li or Dr. Smith who are identified as treating physicians. (Tr. 446) In 1985, 1986, 1987 and 1991, there are hospital records revealing that Dr. Cochett treated plaintiff yet his office notes are not included in the record. (Tr. 200-201, 204, 465) There are no medical records for any year after 1996 yet the review period included the time from 1996 through May 31, 1998.  There is no indication that the ALJ identified the need for plaintiff to appear nor informed the plaintiff that there was a need for these medical records.

When there are clear gaps in the record, particularly where the treating physician's opinion regarding plaintiff's alleged disability is absent, the ALJ has the duty to obtain the medical records. Eschevarria v. Secretary of Health and Human Services, 685 F.2d 751, 756 (2d Cir. 1982), Connor v. Barnhart, 2003 WL 21976404 at 5, 7 (S.D.N.Y. 2003).  Further, the ALJ has the duty to fully develop the record by adequately questioning plaintiff about subjective complaints. Cruz v. Sullivan, 915 F.2d 8, 11 (2d 1990). Because there is clear evidence of gaps in the record and no evidence that the ALJ fulfilled his duty to obtain missing medical records, particularly as here where the plaintiff was proceeding pro se and functioning at borderline intellectual functioning, there is not substantial evidence to support the Commissioner's decision. This Court finds that plaintiff was disabled during the periods

under review: August 2, 1979 through December 31, 1984, February 1, 1985 through December 31, 1985, January 1, 1990 through January 31, 1993 and June 30, 1994 through May 31, 1998.

<u>CONCLUSION</u>

I find there is not substantial evidence in the record to support the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act.  Accordingly, the decision of the Commissioner denying plaintiff's disability claim is reversed, the plaintiff's motion for judgment on the pleadings is granted and defendant's motion for summary judgment is denied.  The case is remanded to Commissioner for the sole purpose of calculation of benefits.


ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

_____
    MICHAEL A. TELESCA
United States District Judge

DATED:    Rochester, New York
          March 29, 2006